IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

PORTLAND DIVISION

| | |
|---|---|
| ANGELA LEE TAVERA,<br><br>Plaintiff,<br><br>v.<br><br>NANCY A. BERRYHILL, Acting<br>Commissioner of Social Security,<br><br>Defendant. | Case No. 3:16-cv-02100-AA<br>**OPINION AND ORDER** |

AIKEN, Judge:

Plaintiff Angela Lee Tavera brings this action pursuant to the Social Security Act ("Act"), 42 U.S.C. § 405(g), to obtain judicial review of a final decision of the Commissioner of Social Security ("Commissioner"). The Commissioner granted plaintiff's application for Supplemental Security Income ("SSI") but denied plaintiff's application for Disability Insurance Benefits ("DIB"). For the reasons set forth below, the Commissioner's decision is reversed and remanded for further proceedings.

## BACKGROUND

In March 2012, plaintiff applied for both Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI"). She alleged intellectual disability beginning December 31, 1998. Plaintiff's application for SSI was approved, but her application for DIB was denied—initially on August 30, 2012, and upon reconsideration on February 6, 2013. A hearing was set for August 11, 2014, but plaintiff did not attend. Another hearing was held on January 12, 2015, before Administrative Law Judge Riley Atkins. At the hearing, plaintiff testified and was represented by counsel. No other testimony was taken. On January 27, 2015, the ALJ issued an unfavorable decision. He found that plaintiff was not disabled within the meaning of sections 216(i) and 223(d) of the Act at any time through June 30, 2001, plaintiff's Title II date last insured ("DLI"). The Appeals Council denied review on August 30, 2016, and plaintiff filed a complaint in this Court.

## STANDARD OF REVIEW

The district court must affirm the Commissioner's decision if it is based upon proper legal standards and the findings are supported by substantial evidence in the record. 42 U.S.C. § 405(g); *Berry v. Astrue*, 622 F.3d 1228, 1231 (9th Cir. 2010). "Substantial evidence is more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Gutierrez v. Comm'r of Soc. Sec.*, 740 F.3d 519, 522 (9th Cir. 2014) (citation and quotation marks omitted). However, even a decision supported by substantial evidence must be set aside if the Commissioner did not apply the proper legal standards in evaluating the evidence. *Reddick v. Chater*, 157 F.3d 715, 720 (9th Cir. 1998). The court must weigh "both the evidence that supports and the evidence that detracts from the ALJ's conclusion." *Mayes v. Massanari*, 276 F.3d 453, 459 (9th Cir. 2001). If the evidence is

subject to more than one interpretation, but the Commissioner's decision is rational, the Commissioner must be affirmed; "the court may not substitute its judgment for that of the Commissioner." *Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001).

## COMMISSIONER'S DECISION

The plaintiff bears the initial burden of proving she is disabled. *Howard v. Heckler*, 782 F.2d 1484, 1486 (9th Cir. 1986). To satisfy this burden, plaintiff must demonstrate an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected . . . to last for a continuous period of not less than 12 months[.]" 42 U.S.C. § 423(d)(1)(A). The Commissioner has established a five-step sequential analysis for determining whether a person is disabled. *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987); 20 C.F.R. § 404.1520(a)(4). Five questions are asked, in order, until the adjudicator arrives at a clear finding of disability or no disability. *Id.*

At step one of the process, the ALJ found that plaintiff did not engage in any substantial gainful activity ("SGA") at any time between the alleged onset date and the DLI ("the relevant period"). Plaintiff alleges a disability onset date of December 31, 1998. Her DLI for Title II purposes is June 30, 2001. Therefore, the relevant period—during which plaintiff must show she was disabled—ended more than 16 years ago; at the time of the hearing, it was already 14 years past. There was no contemporaneous medical evidence demonstrating plaintiff's disability during the relevant period. Thus, at step two of the process, the ALJ concluded that there was insufficient medical evidence to support a finding of disability before the DLI. Accordingly, the ALJ ended his analysis at step two, largely persuaded by the lack of evidence.

## DISCUSSION

Plaintiff concedes that any remand must be for further proceedings, as the record is insufficiently developed for an immediate award of benefits. The question is whether the ALJ's opinion contains errors of law sufficiently harmful to justify a remand of this case for an additional hearing. I find that it does.

Plaintiff alleges that the ALJ erred in failing to consult a medical expert to assist in inferring an onset date of her disability. It is unclear from the record whether that error alone harmed plaintiff's claim, because that error's effect has been obscured by other errors in the ALJ's opinion. I find those errors were harmful and warrant a remand of this case for additional proceedings.

I. *The ALJ's Failure to Adequately Weigh the Medical Evidence Was Legal Error.*

When weighing the medical evidence and resolving ambiguities therein, "the ALJ is the final arbiter[.]" *Tommasetti v. Astrue*, 533 F.3d 1035, 1041 (9th Cir. 2008). Where "the record contains conflicting medical evidence, the ALJ is charged with determining credibility and resolving the conflict[.]" *Chaudhry v. Astrue*, 688 F.3d 661, 671 (9th Cir. 2012) (internal quotation marks omitted). Nevertheless, the ALJ must "explicitly reject a medical opinion or set forth specific, legitimate reasons for crediting one medical opinion over another[.]" *Garrison v. Colvin*, 759 F.3d 995, 1012 (9th Cir. 2014). An ALJ commits reversible error when he rejects or assigns lesser weight to an opinion "while doing nothing more than ignoring it, asserting without explanation that another medical opinion is more persuasive, or criticizing it with boilerplate language that fails to offer a substantive basis" for his determination. *Id.* at 1012–13.

When the opinion of a physician who actually examined the patient is contradicted by the opinion of a doctor who merely reviewed records, "an ALJ may only reject it by providing

specific and legitimate reasons that are supported by substantial evidence." *Id.* at 1012 (internal quotation marks omitted). An ALJ can satisfy the "substantial evidence" standard by "setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." *Id.* (internal quotation marks omitted). Additionally, "[t]he opinion of a non-examining medical advisor cannot by itself constitute substantial evidence that justifies the rejection of the opinion of an examining . . . physician." *Morgan v. Comm'r of Soc. Sec. Admin.*, 169 F.3d 595, 602 (9th Cir. 1999). Moreover, "even when contradicted, a treating or examining physician's opinion is still owed deference and will often be entitled to the greatest weight[.]" *Garrison*, 759 F.3d at 1012 (internal quotation marks omitted).

In this case, the ALJ addressed testimony from four physicians: two examining physicians, Drs. Stuckey and Brischetto, and two reviewing physicians, Drs. Beatty and Anderson. Both of the examining physicians documented diagnoses and test results that, in combination with lay testimony and other evidence in the record, could prove that plaintiff is *currently* disabled within the meaning of the Act. However, neither evaluating physician provided an opinion as to whether plaintiff was similarly disabled *during the relevant period*. By comparison, both reviewing physicians considered plaintiff's "limitations as they currently exist," opining that plaintiff "has severe mental impairments, which in aggregate cause specific cognitive and social limitations" but concluding that "the record includes insufficient evidence from the claimant's alleged onset date to her date last insured" to find that she was disabled during the relevant period. Tr. 25. Rather than crediting the opinions of Drs. Stuckey and Brischetto that plaintiff is currently disabled—and then consulting a medical expert to assist in inferring an onset date of that disability—the ALJ instead chose to credit the opinions of the

Page 5 – OPINION AND ORDER

reviewing physicians who declined to find a present disability, obviating the need to infer any sort of onset date.

A. *The ALJ provided insufficient reasons for discrediting the testimony of Dr. Stuckey.*

Dr. Stuckey diagnosed plaintiff with Anxiety Disorder NOS, rule out Nightmare Disorder, Depressive Disorder NOS, and rule out Borderline Intellectual Functioning. In his final summary, Dr. Stuckey noted that plaintiff is "viewed as a very poor historian with deficient comprehension and estimated very low intelligence" but that an IQ test, which he recommended, had not yet been performed. Tr. 363. Dr. Stuckey included concerns about plaintiff's "veracity of her self-report" regarding her symptoms of anxiety and depression. *Id.*

In his opinion, the ALJ concluded that "[b]ased on the claimant's poor ability as a historian and Dr. Stuckey's concerns regarding her veracity as to her alleged symptoms, his report does not support the claimant's allegation during the relevant period[.]" Tr. 24. That is, the ALJ used Dr. Stuckey's concerns about both plaintiff's limited capacity as a historian and the veracity of her self-reporting to discredit the relevant diagnoses. But Dr. Stuckey's diagnoses took those concerns into account; he chose to diagnose her anyway. The ALJ cited Dr. Stuckey's remarks to suggest that plaintiff is not disabled because she is a poor historian, but Dr. Stuckey concluded precisely the opposite: that plaintiff is a poor historian because she suffers from potentially disabling cognitive limitations.

Additionally, Dr. Stuckey's concerns about the "veracity of [plaintiff's] self-report" were confined to his diagnoses of Anxiety Disorder NOS and a rule out for Nightmare Disorder—specifically, as reasoning for why plaintiff was not instead diagnosed with the more severe "Panic Disorder or PTSD." Tr. 363. The "veracity" phrase is contained within the same sentence as the anxiety/nightmare diagnoses, indicating that it applies just to those diagnoses. *Id.*

Indeed, the narrative portion of Dr. Stuckey's report underscores this connection, as he opined plaintiff's self-report of a 10 out of 10 and a 9 out of 10 to describe her feelings of depression and anxiety were "highly inflated and inconsistent with her affective presentation." Tr. 362.

The ALJ misapplied and selectively quoted Dr. Stuckey's remarks to discredit his entire opinion; that was legal error. The ALJ's reasons for discrediting Dr. Stuckey, while sufficiently specific, were not legitimate, nor were they supported by substantial evidence.

B. *The ALJ similarly discredited—but never explicitly rejected—the medical opinion of Dr. Brischetto.*

Upon examination and the administration of several objective psychological tests, Dr. Brischetto diagnosed plaintiff with a Learning Disorder NOS and Borderline Intellectual Functioning; testing revealed a full scale IQ of 56. The ALJ mentioned Dr. Brischetto's conclusions in his opinion. In the same breath, he raised Dr. Brischetto's concerns that plaintiff "seemed to give up easily on some of the formal testing" and that plaintiff's test scores may "underestimate some her true capacity." Tr. 25 (internal quotation marks omitted). Importantly, however, the ALJ never explicitly rejected Dr. Brischetto's medical opinion. He never drew any conclusions from Dr. Brischetto's concerns; he merely noted them and moved on. That is reversible error. *Garrison*, 759 F.3d at 1012 (ALJ must "explicitly reject a medical opinion").

The ALJ appears to have rejected Dr. Brischetto's opinion based on the documented concerns about plaintiff's effort during testing. But like Dr. Stuckey, Dr. Brischetto did not diagnose plaintiff in spite of her concerns; she incorporated her concerns into her diagnosis. It was her concerns about the accuracy of plaintiff's formal testing that caused Dr. Brischetto to diagnose plaintiff with Borderline Intellectual Functioning even though her scoring "could suggest" the more severe diagnosis of "Mild Mental Retardation[.]" Tr. 385. In sum, the ALJ provided neither specific nor legitimate reasons to reject Dr. Brischetto's opinion.

Page 7 – OPINION AND ORDER

If credited as true, Dr. Brischetto's and Dr. Stuckey's diagnoses tend to indicate that plaintiff is currently disabled within the meaning of the Act. Plaintiff is alleging an intellectual disability under Listing 12.05B. 20 C.F.R. Pt. 404, Subpart P, App. 1 § 12.05. A claimant meets Listing 12.05B if she has, during the relevant period, "[a] full scale . . . IQ score of 70 or below" as well as "[s]ignificant deficits in adaptive functioning currently manifested by . . . marked limitation of . . . [u]nderstand[ing], remember[ing], or apply[ing] information" and "[c]oncentrat[ing], persist[ing], or maintain[ing] pace[.]" *Id.* In her report, Dr. Brischetto noted plaintiff's full scale IQ of 56, her "extremely low" abilities to recall and understand information, and her tendency to "give up easily" on some of the tests. Tr. 383–384.

In sum, the ALJ disregarded the opinions of two examining physicians who concluded plaintiff was currently disabled without legally sufficient justification, choosing instead to credit the opinions of two reviewing physicians. That was error.

II. *The ALJ's Failure to Credit the Lay Testimony of Anna Weller Was Legal Error.*

Lay witness testimony as to a claimant's symptoms is competent testimony that an ALJ must consider. *Dodrill v. Shalala*, 12 F.3d 915, 918–19 (9th Cir. 1993). An ALJ may discount lay witness testimony only for "reasons that are germane to each witness." *Id.* at 919. Furthermore, "the reasons germane to each witness must be specific." *Bruce v. Astrue*, 557 F.3d 1113, 1115 (9th Cir. 2009) (internal quotation marks omitted). The ALJ's opinion described lay testimony from two of plaintiff's friends as well as from her aunt, Anna Weller. The ALJ summarized the testimony of each lay witness and dismissed them all with the same reasoning: (1) "[t]he statements from Ms. Vails, Ms. Sanchez, and Ms. Weller all postdate the claimant's Title II date last insured by at least ten years" and "do not specifically address [plaintiff's]

abilities and limitations during the relevant period[,]" and (2) "they do not describe symptoms or limitations so severe as to preclude plaintiff from fulltime work activity." Tr. 26.

As to the first reason, neither Ms. Vails nor Ms. Sanchez came to know plaintiff until around four years after her DLI (a fact the ALJ noted in his opinion); that is a reason sufficiently germane to discredit those witnesses' testimonies. However, Ms. Weller has known plaintiff since her birth. More than that, Ms. Weller was able to provide testimony concerning details of plaintiff's childhood and upbringing that did not appear elsewhere in the record. Ms. Weller's testimony specifically concerned the period before plaintiff's DLI. Thus, the first reason proffered by the ALJ is not germane to Ms. Weller's testimony.

Regarding the ALJ's second reason for discrediting her testimony, Ms. Weller testified to several circumstances that shed light on the severity of plaintiff's symptoms and limitations: "we all personally saw that [plaintiff's mother] drank and smoked pot and . . . used other drugs during her pregnanc[y;]" plaintiff's grandparents frequently had to "repeat the instructions [for] and show her how to do" simple household chores; "[t]hroughout her life, [plaintiff has had] a hard time staying focused" and "does not pay attention and/or doesn't understand[;]" and, while she was in school, "[i]t was told to [plaintiff's family] that although she may have been in her teen years her mental capacity was that of a small child[.]" Tr. 352–54. The symptoms described by Ms. Weller are similar to those that must be demonstrated to meet Listing 12.05B, as explained above. 20 C.F.R. Pt. 404, Subpart P, App. 1 § 12.05 (including low IQ, difficulty understanding, and difficulty concentrating). More importantly, Ms. Weller described pre-DLI symptoms that were consistent with the diagnoses given by examining physicians over a decade post-DLI. The ALJ rejected Ms. Weller's opinion as inconsistent with fulltime disability without proceeding beyond step two of the analysis; it is unclear how the sorts of cognitive limitations Ms. Weller

Page 9 – OPINION AND ORDER

alleged would affect plaintiff at step four or step five. Thus, to suggest that Ms. Weller's testimony should be discredited because it did not describe symptoms and limitations sufficient for a finding of disability within the relevant period is error. While that reasoning may have been germane to the other lay witnesses, it is not germane to Ms. Weller.

III.    *The ALJ Impermissibly Removed All Ambiguity to Avoid Inferring an Onset Date.*

The ALJ in Social Security hearings has a duty to assist claimants in developing the administrative record. *DeLorme v. Sullivan*, 924 F.2d 841, 849 (9th Cir. 1991). Part of that duty is establishing the date when plaintiff became disabled under the Act—the onset date of plaintiff's disability. SSR 83–20, *available at* 1983 WL 31249. When the administrative record "is ambiguous as to the onset date of disability, the ALJ must call a medical expert to assist in determining the onset date." *Armstrong v. Comm'r of Social Sec. Admin.*, 160 F.3d 587, 590 (9th Cir. 1998).

Defendant argues that the ALJ did not need to consult a medical expert in inferring the disability onset date because the medical evidence was not ambiguous. That characterization is consistent with the ALJ's approach in this case. As the record—and the foregoing analysis—make clear, the ALJ had serious doubts about plaintiff's veracity. The ALJ used those doubts as the basis for discrediting all medical evidence that could have demonstrated plaintiff's present disability. Then, proceeding from the belief that plaintiff was not presently disabled, the ALJ had little trouble dismissing lay evidence that would tend to show that plaintiff's alleged disability was manifest during the relevant period. In doing so, the ALJ removed all potential for ambiguity—and thus obviated the need to consult a medical expert to infer an onset date. That process and result were fatal error.

Some troubling aspects of the hearing record underscore the ALJ's premature conclusion in this case. First, the hearing was very brief, lasting only 18 minutes. Tr. 34, 49. In a case decided on lack of evidence, common sense suggests the hearing should be longer than usual rather than shorter than usual, so that the ALJ may make every effort to utilize the claimant and any other sources of evidence present to develop the record to the fullest extent possible. Additionally, I am troubled by the ALJ's comments at the hearing's outset. When, as a preliminary matter, plaintiff's counsel raised the possibility of a presumptive finding of disability based on plaintiff's full scale IQ score and the corroborating testimony from Ms. Weller, the ALJ interrupted to give his assessment of the evidence in the record:

> And that—you know, it's remarkable if you read the psychological evaluations done in this case. Each of the evaluators speak to remarkable inconsistencies. To be honest with you, I'm quite surprised that the state paid this case just based on a review of how they found her disabled for SSI. It was not a clear-cut case of disability based on my review of the records[.] . . . That's not before me today so I'm not considering the SSI benefits, but I don't believe there's any presumptive disability finding based on the exhibits that have been submitted today.

Tr. 36. First, it was unnecessary for the ALJ in plaintiff's DIB hearing to opine on the legitimacy of her earlier award of SSI benefits. Moreover, his remarks suggest that the ALJ had decided at the hearing's outset that he would not be persuaded by any evidence in the record. That is concerning. The ALJ's comments in the hearing support the implication in his opinion: that he had no intention of crediting the medical or lay evidence, regardless of what was said at the hearing, because he did not consider plaintiff to be disabled—not now nor in the past.

Because the ALJ failed to adequately credit or discredit the medical and lay evidence according to appropriate legal standards, he improperly eliminated the potential for ambiguity and thus the potential need to consult a medical professional to infer an onset date of disability. That process amounted to harmful legal error.

## CONCLUSION

Accordingly, the Commissioner's decision is REVERSED and this case is REMANDED FOR FURTHER PROCEEDINGS consistent with this opinion.

IT IS SO ORDERED.

Dated this 21st day of September 2017.

_____
Ann Aiken
United States District Judge